**Dale LATAILLE, Plaintiff, Appellant,**

v.

**Joseph PONTE, etc., et al.,
Defendants, Appellees.**

No. 84–1593.

United States Court of Appeals,
First Circuit.

Argued Dec. 7, 1984.

Decided Feb. 6, 1985.

John C. Bartenstein, Boston, Mass., with whom Doane F. Kiechel and Ropes & Gray, Boston, Mass., were on brief for plaintiff, appellant.

Francis G. Chase, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

■ The case before us raises a single issue: whether the past disciplinary record of a prisoner was admissible in his 42 U.S.C. § 1983 suit against corrections officers. We rule that it was not.

Appellant, Dale Lataille, brought suit against six corrections officers alleging that they had beaten him while he was housed in the Departmental Segregation Unit (DSU) at Massachusetts Correctional Institute at Walpole (MCI Walpole). Both Lataille and the corrections officers testified at the ensuing trial. Lataille testified that on his first morning in DSU, while he was temporarily housed in a shower cell, various corrections officers turned the shower on him, spit at him, punched him as he was handed his breakfast tray, and then administered a severe beating while he was immobilized by handcuffs connected by a bar to leg shackles. The corrections officers testified that Lataille spit on them, punched an officer as he was handing Lataille a breakfast tray and then ran out of his cell and had to be restrained by several officers before he could be cuffed and shackled.

As part of their defense, defendants sought to bring to the jury's attention Lataille's disciplinary record while at prison, which included assaults, hostage taking, weapons possession, fire setting, and attempted escape. In his opening statement, defense counsel stated to the jury that Lataille had been transferred to the DSU the night before because he had "threatened an officer and attempted to take him hostage." Plaintiff's counsel moved to strike this statement. The court let it stand, saying to the jury: "It is a statement of what he thinks the evidence will establish. If the evidence doesn't establish it, you can disregard it when you retire to deliberate."

Lataille's disciplinary record came up again during cross-examination. Defense counsel first sought to ask Lataille about the substance of the disciplinary offense which led to his transfer to DSU the night before the alleged beating. Plaintiff objected and, at a side bar conference, argued that evidence of prior assaultive behavior is not admissible to show that a person was the aggressor in a fray, citing Federal Rule of Evidence 404. Defendant responded that Lataille had more than sixty disciplinary reports, seven of which involved assaults on guards. The court overruled the objection, stating that "his history in the institution is relative [*sic*] to the case and I will take it." During the cross-examination which followed, Lataille's involvement in assaults, escapes, weapons possession, and fire setting was brought out.

At the end of the cross-examination of Lataille, defendants sought to introduce into evidence the prison document containing the disciplinary record of Lataille. When plaintiff objected to the admission of this document, defense counsel argued that it should be "accepted as a defendant's exhibit to show the plaintiff's penchant for violent conduct." Plaintiff's counsel then renewed his argument that such evidence was inadmissible under Rule 404 and additionally argued that, since none of the disciplinary offenses listed therein went to truthfulness, the document was not admissible under Rule 608. The court excluded the document, noting that Lataille had already testified about most of it anyway.

Defense counsel returned to the subject of Lataille's disciplinary history in his closing argument:

> He has a long and violent history of confrontations within the institution and, by his own admission, in that time that he has been at MCI Walpole he has had 61 disciplinary actions against him for various offenses, which include violent assaults on correctional personnel, the lighting of fires, the possession of weapons, and attempted escape, refusal to stand for counts, and many other violations.

After deliberating for approximately three and one-half hours, the jury returned a verdict for all the defendants. Plaintiff asks that the verdict be set aside and the case be remanded for a new trial. He assigns as error the trial court's admission of his prior disciplinary record. Plaintiff argues that this evidence was inadmissible as a matter of law since its sole purpose was to show he had a violent disposition and, therefore, was the likely aggressor in this incident. The admission of this evidence, plaintiff claims, was so prejudicial to his case as to substantially impair his rights. Defendant claims that the evidence was relevant to show knowledge, intention, opportunity and state of mind, all of which are purposes for which prior bad acts may be admitted, and that the trial judge did not abuse his discretion by admitting this evidence even though it was somewhat prejudicial to Lataille's case.

■ It is well settled that prior acts may not be admitted to prove that a person acted in a similar fashion in the case at hand. That is the plain meaning of Federal Rule of Evidence 404: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." 404(b). This rule reflects the judgment of the Advisory Committee on the Federal Rule of Evidence that

> "[c]haracter evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened."

Fed.R.Evid. 404(a) advisory committee note (quoting California Law Revision Commission, Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence). *See also* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[303] at 404–20 (1982). This court has often noted the prejudicial effect of such "propensity

evidence." *E.g., United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982).

■ The Federal Rules of Evidence provide two exceptions[1] to the general rule that evidence of prior conduct is inadmissible: evidence of misconduct or criminal convictions may be admitted under Rules 608 and 609 if the conduct in question is probative of truthfulness, and evidence of prior acts may be admitted under Rule 404(b) to show motive, opportunity, intent, knowledge, identity, etc. Evidence offered under Rule 404(b) must also be specifically determined to be more probative than it is prejudicial. Fed.R.Evid. 404(b) advisory committee note. This determination is committed to the discretion of the district court. *United States v. Fosher,* 568 F.2d 207, 212–13 (1st Cir.1978).

We must first determine for what purpose the evidence of Lataille's disciplinary record was offered and received. If we consider the comments of defense counsel, it is clear that the purpose of the evidence was to show that Lataille was a violent and aggressive person. Defense counsel, when called upon to justify the admission of this evidence, made no attempt to address the Rule 404 concerns raised by plaintiff. On one occasion he simply pointed to the fact that these prior incidents involved violence and were numerous. On the other occasion, he baldly asserted that this evidence was offered to "show the plaintiff's penchant for violent conduct." Nothing defense counsel said suggested that the purpose of the evidence fell within any of the 404(b) exceptions or was offered to establish truthfulness or untruthfulness under 608(b).

From the record, it appears that the court admitted the evidence on the basis of the reasons advanced by defense counsel. No attempt was made to determine whether the evidence fell within any of the exceptions of Rule 404(b), and the reason given for excluding the document containing plaintiff's prison record was that the sub-stance of it had come in during cross-examination, not that it was inadmissible under either Rule 404(b) or 608(b).

Defendants now suggest four special purposes for which Lataille's prior disciplinary offenses could have been relevant; none are tenable. A review of the record reveals that there could be no other purpose for the admission of this evidence except to show plaintiff's past history of violent acts while in prison.

■ Defendants first argue that the evidence of the hostage taking which led to Lataille's placement in DSU was relevant to Lataille's "knowledge" and therefore admissible under Rule 404(b). They explain the relevance of this information by arguing that it was necessary for the jury to know that Lataille had been sent to DSU for a legitimate reason in order to prevent undue hostility toward the defendants and sympathy for Lataille because he had been housed in a shower cell overnight. The record shows, however, that there was no need to counter a "prejudicial backlash" of this kind with information about the nature of Lataille's offense. Lataille did not attempt to suggest that his transfer to DSU was unfair; in fact, he testified that it was brought about by a disciplinary offense. The record also indicates that Lataille testified that he was placed in a shower cell because all the other cells were occupied. Furthermore, there was no evidence that defendants were in any way responsible for Lataille's transfer; the prison guard who wrote up the offense and was responsible for the transfer was not one of the defendants. In addition, we do not understand how Lataille's knowledge" of the facts resulting in his transfer is relevant to the issue of whether defendants or Lataille precipitated the assault.

■ Defendants also invoke the Rule 404(b) "knowledge" exception to justify the admission of evidence about Lataille's failure in the past to stand for a head count.

---

**1.** In addition to the two exceptions mentioned above, there is also a narrowly drawn exception allowing proof of specific instances of conduct where "character or a trait of character is an essential element of a charge, claim, or defense...." Fed.R.Evid. 405(b).

They suggest that it was necessary to demonstrate that Lataille was familiar with the institutional head count procedures in order to counter any implication of harassment arising from the fact that defendants turned on the lights in the shower at 7:00 A.M. Since any prison inmate would know that a head count is made at least once a day, there can be no reason to inquire about disciplinary offenses involving a head count in order to show that an inmate would be familiar with the head count process. Furthermore, Lataille's offenses involved a failure to stand while the count was made. We fail to see how this fact could have any bearing on his knowledge of whether the lights are turned on in a shower when a count is made.

■ Defendants next argue that evidence of Lataille's prior escape attempts was probative of Lataille's motive when, according to defendants, he ran out of the cell block tier, and was also probative to show that defendants thought he was trying to escape. The first argument totally ignores the principle behind the exclusion of this type of evidence. Evidence that Lataille had tried to escape in the past is not admissible to show that he was trying to escape in this instance. This is precisely what Rule 404(b) prohibits. The second argument has no factual support. There is no evidence that defendants had ever come into contact with plaintiff or knew anything about his prior escape attempts. Consequently, there could not have been any connection between Lataille's past conduct and the belief of defendants that he was trying to escape.

■ The third special purpose offered by defendants is that of "opportunity." They argue that evidence of Lataille's two prior assaults involving food "was relevant to the issue of Lataille's opportunity since, lacking a slot to insert a food tray, the shower grill had to be opened to feed him." At best, this is an argument that since Lataille had assaulted guards with food in the past, it is likely that he did it again in this situation. This is clearly forbidden by Rule 404.

Defendants' final argument is that Lataille's violent disciplinary history was relevant to the actors' knowledge of each other and their states of mind. The record, however, is devoid of any evidence that the defendants knew or knew of Lataille or that Lataille knew or knew of them. Consequently, Lataille's prior history cannot have had any impact on defendants' state of mind.

■ It is abundantly clear that the evidence of Lataille's prior disciplinary offenses was offered by defendants and admitted by the district court for the purpose of showing that Lataille was a violent person and that he, therefore, must have been the aggressor and precipitated the assault. This evidence was clearly inadmissible under Rule 404. Evidence of past misconduct cannot be introduced to show the likelihood of such misconduct in the case at hand. *Tigges v. Cataldo*, 611 F.2d 936 (1st Cir. 1979) (past abuses of authority by police officer not admissible in § 1983 case alleging police brutality). The rule must be applied without regard to the status of the plaintiff or the defendant.

■ The final issue is whether the admission of the evidence affected Lataille's substantial rights. *See* 28 U.S.C. § 2111 (1982); Fed.R.Evid. 103; Fed.R. Civ.P. 61. Our standard for determining whether the admission of such evidence is harmless error is whether we can say "with fair assurance ... that the judgment was not substantially swayed by the error...." *United States v. Pisari*, 636 F.2d 855, 859 (1st Cir.1981) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). The centrality of the evidence, its prejudicial effect, whether it is cumulative, the use of the evidence by counsel, and the closeness of the case are all factors which bear on this determination. 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[06] at 103–61 to 103–63 (1982).

The sole issue here is who was the aggressor, plaintiff or defendants. There can be no question that evidence of the kind

admitted here, which suggests that one party is a consistently violent aggressor, is of central importance to a case involving assault. *See Jordan v. Medley,* 711 F.2d 211, 219 (D.C.Cir.1983). It is also clear that such evidence is prejudicial. It was the prejudicial nature of such "character evidence" which led the Advisory Committee to recommend that it be inadmissible. Fed.R.Evid. 404(a) advisory committee note. Furthermore, this was not a case in which the prejudicial and improperly admitted evidence was merely "cumulative." *See United States v. Morris,* 700 F.2d 427, 431 (1st Cir.), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983). Whatever prejudicial effect this information had can be entirely attributed to its improper admission. In addition, defense counsel's main focus was on Lataille's past record. He used it to undermine Lataille's credibility on cross-examination and stressed it in his opening statement and closing argument. Without this evidence, the case was quite close. We can only conclude that plaintiff's substantial rights must have been affected by the improper admission of his prior disciplinary offenses.

*Reversed and remanded for a new trial.*