**Richard WEST, Plaintiff-Appellant,**

v.

**Thomas LOVE and James O'Dell, Defendants-Appellees.**

Nos. 83–3198, 84–1771.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1985.

Decided Oct. 30, 1985.

Julia A. Martin, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Rita M. Novak, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before WOOD and FLAUM, Circuit Judges, and WYATT, Senior District Judge.[*]

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff Richard West, an inmate at Stateville Correctional Center in Illinois,

charged in this 42 U.S.C. § 1983 action that two correctional officers, defendants Thomas Love and James O'Dell, violated his rights under the Eighth and Fourteenth Amendments by bodily attacking and injuring him. A jury returned a verdict in favor of defendants. West appeals from that judgment, claiming that he was prejudiced before the jury by the admission of evidence of the special confinement unit in which he was confined at the time of the incident and evidence of his disciplinary history, and by the exclusion of evidence of his acquittal in a case in which he had been charged with stabbing Love. West also appeals from the denial of his post-trial motions seeking relief from the judgment pursuant to Fed.R.Civ.P. 60(b), and alternatively, for discovery to establish a more complete record to support the 60(b) motion. These motions concern the post-trial disclosure that during trial, but outside the courtroom, Love threatened to kill Richard DeRobertis, the warden at the institution, who was present as a defense witness. We affirm the district court on all issues.

### Background

It is not disputed that on June 23, 1980 there was a scuffle between West and Love, but there is a dispute as to who provoked it, who did what to whom, and what injuries may have resulted. It was West's word against Love's as to how the scuffle started because for a few moments no one else was present. There is some variance between the versions of the few other witnesses of the events which followed, but the jury preferred the version of the correctional officers.

At the time and place the scuffle began, West had stopped to use a drinking fountain. West, in handcuffs, was being escorted by Love and O'Dell from the prison yard to his cell within the unit. West testified that Love accused him (West) of stabbing him. As West bent to take a drink from the fountain, Love struck him in the head.

[*] The Honorable Inzer B. Wyatt, Senior District Judge of the Southern District of New York, is sitting by designation.

Taking advantage of West's handicap (the handcuffs), Love began to swing West around by the cuffs and beat him in the face and chest. O'Dell, who had been ahead and had just turned a corner returned quickly to the scene and held West's arms while Love continued to beat him.

Love's version is different. Although handcuffs obviously may be a handicap, they also may be used as a weapon. He testified that West used them as a weapon and also kicked and bit him. According to Love, O'Dell, who was walking ahead of him and West, returned when he heard the commotion and assisted him in getting West under control. Love and O'Dell maintain that they used only the force necessary to restrain West. Lieutenant Pringle, a supervisor, arrived shortly thereafter and directed that West be returned to his cell. Pringle observed no injuries to West. O'Dell testified that while escorting West back to his cell following the fracas, West hit him in the head with his cuffed hands, causing a concussion.

The injuries, except for O'Dell's concussion, were not severe. Love says West bit his finger, and West says he had head, rib and other bruises, and that the handcuffs cut his wrists. West claims he asked for medical treatment which he did not receive, but nothing in the record suggests any injury to West requiring medical attention. West himself makes little of his alleged injuries, emphasizing instead the principle that any constitutional violation is compensable. He claims he should be compensated in the amount of $10,000 for the deep humiliation he suffered in this scuffle. Under the circumstances that appears to be an impressive amount of humiliation.

Stateville is a maximum security prison, and inside that prison West was assigned to a special segregation unit which is where the scuffle occurred. Controversial evidence, the focus of this appeal, was admitted about the unit and its purpose. The gist of the testimony was that the segregation unit was reserved for inmates with a propensity for violent behavior. Additionally, the warden was permitted to testify that West had been placed in the unit because he "had exhibited a history in a series of violent aggressive, acting-out behavior inside the institution, which have generally covered assaults on inmates and staff and other aggressive acts."

Each side tried to use to advantage a prior but fairly recent incident in which Love had accused West of stabbing him. West claimed Love attacked him in the present scuffle because Love thought West had stabbed him. Love claimed West attacked him in the scuffle because Love had reported the stabbing incident. The court admitted some evidence of this incident as relevant to the possible motivations for the acts of the parties, but declined to admit as irrelevant the fact that West had been acquitted of the stabbing charge.

*Issues*

West challenges the admission of evidence that the special segregation unit housed inmates who had demonstrated a propensity for violent behavior. He claims this evidence was admitted in violation of the prohibition of the use of character evidence set forth in Rule 404 of the Federal Rules of Evidence. However, West himself on direct examination explained that he was confined in the orientation building which had two sections, the confinement section where he was and the death row section. The confinement unit was the setting for the scuffle and explains the use of handcuffs within the institution and a two-guard escort. When a unit prisoner's exercise time is up in the yard where he exercises alone, and West was a powerful weight lifter, the inmate goes to an opening in the door to the unit where he puts his wrists through to be handcuffed before being admitted inside where guards and prisoner are then together. Evidence of being in the confinement unit did not help West's case, but this scuffle cannot be relocated to some more suitable prison setting.

Under Rule 404(a), applicable in civil as well as criminal cases, evidence of an individual's character is not admissible "for the purpose of proving that he acted

in conformity therewith on a particular occasion." Rule 404(b), however, provides that evidence of wrongful acts can be introduced as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." If the evidence offered is relevant to an issue other than character, the court must determine whether its probative value is substantially outweighed by the danger of unfair prejudice. As we recently explained, evidence is not prejudicial merely because it damages the opposing party's case. *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir.1985). Rather, the danger of unfair prejudice is defined as the "likelihood that the evidence will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented on the crime charged...." *Id.* Additionally, the danger of unfair prejudice must *substantially* outweigh the probative value of the evidence before its exclusion is warranted. *Id.* The trial court's balancing of probative value and unfair prejudice is highly discretionary and its decision on admissibility will be accorded "great deference." *Id.*

■ The evidence that the scuffle took place in the confinement unit reserved for inmates with a propensity for violent behavior was not inadmissible "character evidence." It was relevant to the issue whether the force used against West was excessive or reasonable under the circumstances. The jury was instructed to consider "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Defendants' assessment of the danger posed by the situation in that unit bears on the issue whether they acted reasonably and in good faith. Correctional officers are not required to take excessive personal risks with inmates classified as violent. That defendants were dealing with an inmate housed in the special confinement unit rather than with a trusty housed on a prison farm is clearly relevant to their assessment of the danger posed and the amount of reasonable force to be applied. This evidence bearing

on defendants' states of mind was admissible under Rule 404(b). *Crawford v. Edmonson*, 764 F.2d 479, 484 (7th Cir.1985); *Carson v. Polley*, 689 F.2d 562, 573 (5th Cir.1982). The reality of this case is that plaintiff is a felon housed in a state prison, which itself suggests that his character is not entirely above reproach. We conclude that the trial court did not abuse its discretion in admitting this evidence.

■ West also contends that the district court erred not only in admitting evidence in general about the unit, but also additional evidence that explained why he had been placed in the special segregation unit. The explanation was that West had a history of violent, aggressive behavior which included assaults on inmates and staff members. This much, however, the jury could have inferred from the fact that West was housed in a unit reserved for violent inmates. However, this evidence was admissible to counter any prejudicial backlash that might have been occasioned by West's own testimony on direct examination that no one had informed him why he had been placed in the special segregation unit. West's testimony raised an inference that West had done nothing to warrant such placement and was therefore being treated unfairly. We find no error in permitting defendants to dispel any such notion with the generalized explanation that West was in fact qualified to be confined in the unit.

West argues that this "rebuttal rationale" cannot justify the admission of this explanatory evidence. The introduction of character evidence in rebuttal, he contends, is permissible only in criminal cases. 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 404[03] (1983). The Advisory Committee Notes to Rule 404 reject West's argument "that circumstantial use of character ought to be allowed in civil cases to the same extent as in criminal cases, i.e., evidence of good (nonprejudicial) character would be admissible in the first instance, subject to rebuttal by evidence of bad character." The evidence was offered here, however, not to show that West had a

propensity for violent behavior, but to rebut any inference that he had been unfairly treated. Simply put, the evidence did not constitute inadmissible "character evidence."

The issue in *Lataille v. Ponte*, 754 F.2d 33, 37 (1st Cir.1985), considered by West to be an "extremely pertinent" case, had a similar issue, whether the past disciplinary record of a prisoner was admissible in his 42 U.S.C. § 1983 suit against correction officers. The *Lataille* court held that the disciplinary record was not admissible, but the circumstances were very different. Defense counsel in *Lataille*, in his opening statement, began by making reference to plaintiff's attempt to take an officer hostage, the action which resulted in his transfer to segregation where the alleged beating by prison guards took place. During trial the court admitted evidence of plaintiff's sixty disciplinary actions, which included assaults on guards, attempted escapes, weapons possession, hostage taking, and arson. All that evidence was reviewed in defense counsel's final argument. On appeal from a verdict for all defendants the court reversing found that it was abundantly clear that the evidence of Lataille's prior disciplinary offenses was offered and admitted solely for the purpose of showing that Lataille was a violent person and that he therefore must have been the aggressor and precipitated the assault. 754 F.2d at 36–37. We are in agreement with *Lataille*, but that is not this case. Here, the evidence was admitted for permissible purposes and was strictly limited to avoid undue prejudice to West. Unlike *Lataille*, there was evidence that defendants were well-acquainted with West and he with them. West opened up the issue of his placement in the special segregation unit, and West's history of violent behavior which caused his transfer to the unit was clearly relevant to the defendants' assessment of the situation and to the reasonableness of their response.

Two other issues remain. The first is whether the court erred in excluding evidence that West had been acquitted of the criminal charge of stabbing Love. The district court found the stabbing incident relevant to the issue of motive as each party claimed that it was the cause of the other's attack. The court found that West's actual acquittal of the stabbing charge was, however, not relevant to the motive issue. We agree. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Evidence which is not relevant is not admissible. Fed.R.Evid. 402. The evidence that West had been acquitted had no tendency to make Love's personal belief that West had stabbed him more or less probable. West claims he was prejudiced by the exclusion because the jury might have inferred that he was guilty of this "bad act." The district court, however, made clear that the alleged stabbing was only a claim by Love, not a fact. In view of the limited amount of evidence admitted for the limited motive purpose, we cannot find that exclusion of the fact of acquittal was reversible error.

The final issue is one raised by West's motions for relief from judgment under Fed.R.Civ.P. 60(b)(2) and (3) and alternatively, for discovery. In a rather bizarre development which came to light after trial it was learned that Love had threatened to kill DeRobertis, the warden and one of his witnesses, on the morning that DeRobertis testified. The court heard the arguments of the parties, and considered an eyewitness report from a deputy U.S. marshal, as well as the affidavit of DeRobertis. Revealed was a history of a poor working relationship between Love and DeRobertis. In his affidavit, DeRobertis explained that Love's threat was the result of "two heated exchanges" between himself and Love because of some other matter. DeRobertis stated that he did not take Love's threat seriously and that his testimony at trial was unaffected by the threat. The district court concluded that Love's misconduct was totally unrelated to the lawsuit, did not

prejudice West's case, and had no influence on DeRobertis' testimony.

■■■■ For relief from judgment under Rule 60(b)(2), the movant has to show, among other things, that the evidence was discovered following trial, that the movant had exercised due diligence to discover the evidence, that the evidence is material, and that it will likely produce a new result at a retrial. *United States v. Walus*, 616 F.2d 283, 287–88 (7th Cir.1980). The poor relationship between Love and DeRobertis was no secret and was open for discovery by West prior to trial. Although the actual threat, of course, could not have been discovered before it happened, the district court found that it was not probative of Love's truthfulness or untruthfulness so as to be admissible for the purpose of impeachment under Fed.R.Evid. 608(b). The court reasoned that:

> Whether the threats related to DeRobertis' testimony is the crucial question. Evidence of the threats would undermine Love's credibility if, for example, Love intended to coerce DeRobertis into perjuring himself. An honest man does not force another to choose between telling the truth and dying for doing so.

The court found the record devoid of evidence that the threats were in any way related to DeRobertis' testimony. We think the district court's reasoning is sound. Had Love threatened DeRobertis in an attempt to prevent him from testifying truthfully, relief might be warranted. This was not the case. Under the circumstances, we cannot say that the trial court abused its broad discretion in ending the matter without further discovery and letting the jury verdict stand as final.

■■■■ Nor does West's position fare any better under the criteria of Rule 60(b)(3) since West was required to show by clear and convincing evidence that the verdict was obtained through misconduct and that the misconduct was of such a

nature that it prevented plaintiff from fully and fairly presenting his case. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir.1978). Love's misconduct was clear, but, as the district court found, it in no way prevented plaintiff from fully and fairly presenting his case. As we have noted, this is not a case in which a party's threat was intended to discourage a witness from testifying or from testifying truthfully. And, as the district court found, West cannot seriously dispute the truth of DeRobertis' testimony, which was confined to general policies and practices at Stateville and the general reasons for West's placement in the confinement unit. DeRobertis' testimony in no way touched upon the assault. The threat was not relevant to the incident between Love and West. West has failed to meet his burden of establishing that Love's misconduct prejudiced the presentation of his case.

AFFIRMED.[1]

---

1. This case was well briefed by Julia A. Martin assisted by Barbara S. Steiner and well argued by Julia A. Martin, both of the firm of Jenner and Block of Chicago, who were serving as counsel for plaintiff by appointment of this court.