PRISCILLA BARRY vs. STOP AND SHOP COMPANIES, INC.,
& another.[1]

Norfolk.    January 16, 1987. — May 26, 1987.

Present: GREANEY, C.J., KAPLAN, & ARMSTRONG, JJ.

*Sale*, Warranty. *Warranty. Uniform Commercial Code*, Warranty. *Negligence*, Manufacturer, Lawnmower, Adequacy of warning, Proximate cause. *Practice, Civil*, Judgment notwithstanding verdict.

At the trial of a claim for personal injuries resulting from alleged breach of the implied warranty of merchantability of a lawnmower, the judge properly allowed the defendant manufacturer's and seller's motions for judgment notwithstanding the verdict and correctly denied the plaintiff's motion for a new trial, where the plaintiff had not shown that the injuries to her hand were proximately caused by the defect in the lawnmower [226-229], and where the evidence demonstrated with high probability that the plaintiff had acted unreasonably in confronting the moving blade of the machine [229-230].

CIVIL ACTION commenced in the Superior Court Department on March 30, 1982.

The case was tried before *George Jacobs*, J.

*John R. Lamont* (*Gregory P. Hancock* with him) for the plaintiff.

*Edward J. O'Brien* for the defendants.

KAPLAN, J.    Priscilla Barry, buyer, sued Stop and Shop Companies, Inc. (Stop and Shop), seller, and Wheeler Manufacturing Co., manufacturer, for an alleged breach of an implied warranty of merchantability of a lawnmower, resulting in injuries to her person.[2] After trial, a jury brought in verdicts against the defendants for $30,000, but the judge, having de-

---

[1] Wheeler Manufacturing Company.

[2] The plaintiff abandoned her pleaded counts in negligence and express warranty. Counts in "strict" liability were dismissed, leaving the counts in implied warranty; see note 5, *infra*.

nied the defendants' motions for directed verdicts, allowed
their motions for judgments n.o.v. and denied the plaintiff's
motion for a new trial;[3] these latter rulings are the subject of
the plaintiff's appeal. We affirm. The evidence did not make
out a case for liability.

*Summary statement.*[4] The plaintiff, aged forty-two, em-
ployed as a secretary, on August 9, 1980, drove to a "Bradlees"
department store (a division of the defendant Stop and Shop)
at Shoppers' World, Framingham, and bought a new, push-
ahead, gas-powered, three horsepower, vertical rotary blade
lawnmower for some eighty dollars. It was a display model
and the only one of its type and price left on the floor. The
plaintiff asked for the owner's manual, but none was on hand.
That did not disturb her, as she had long owned a similar
mower. The salesperson showed her where to put the gas and
oil, and how to start the mower.

Arriving home with the mower, the plaintiff readied it with
gas and oil and commenced mowing her lawn. Shortly she felt
and saw the mower gouging the grass and earth. She pressed
the on-off switch on the handle to the off position, thereby
stopping and silencing the engine, and turned the mower on
its side. Bending to observe, she saw that a "baffle," a curved
metal piece inside and at the rear of the "deck" (the housing
for the blade), and supposed to be attached at each end to the
deck, had slipped down and forward, where it could reach and
catch the lawn. The plaintiff with her hand pushed the baffle
into place. She started the mower again by pulling the side-cord,
and resumed mowing. The same difficulty developed and the
plaintiff acted as before, pressing the switch, turning the mower
on its side, etc. This happened two more times. Now, for the
fifth time, the plaintiff felt the mower gouging grass and earth.
She stopped pushing the mower forward. At just this point,

---

[3] In taking the jury verdicts and then allowing judgments n.o.v., the trial
judge was following the sequence recommended in *Soares* v. *Lakeville
Baseball Camp, Inc.*, 369 Mass. 974 (1976), and other cases.

[4] As required in reviewing judgments n.o.v., we read the facts with favor
toward the plaintiff. Actually there was little material dispute. A few differ-
ences are noted below.

she testified, she "blanked out" (although without becoming unconscious). The next thing she recalled was much blood and severe pain in her left hand. A part of her thumb had been severed and other fingers mangled, obviously by the rotating blade. Neighbors responded to her cries and she was taken to a nearby hospital where she underwent reconstructive surgery. She remained in the hospital for about three weeks and had long outpatient treatment thereafter, and she was left with some permanent impairments.

Shortly after the plaintiff returned from the hospital, her friend Carol Kane took out the mower to do the plaintiff's lawn. It misbehaved as before. Examining the mower at rest, Kane found that at one end the baffle had come loose from the deck. Using her hands and a screwdriver, she detached the baffle at the other end and removed it. Then the mower performed normally. Later an expert retained by the plaintiff examined and photographed the mower which remained in the plaintiff's possession.

*Condition of the product.* We comment on whether a jury could find that the mower was defective and dangerous — with a "propensity," as the judge charged, "for causing physical harm beyond that which is reasonably to be anticipated from such a product," compare *Back* v. *Wickes Corp.*, 375 Mass. 633, 642 (1978) — a first step in deciding whether the defendants might be liable for breach of warranty.[5] Attention of course centers on the baffle. Its main purpose was to help in producing or enhancing an air current that would propel the grass cuttings into the outchute; a minor purpose, as stated by the defendants' expert, was "[t]o deter one's foot from entering the blade tip circle." On each side, a bolt ran through the rear wheel, the deck, and the baffle, with an arrangement of nuts, washers, etc., in the appropriate places. The expert on the part of the plaintiff testified that the design was defective because it would

---

[5] In the respects relevant here, the warranty under the Uniform Commercial Code (G. L. c. 106, § 2-314 [2] [c] ) conforms in substance to the "special liability" rule of § 402A of the Restatement (Second) of Torts (1965). See *Wolfe* v. *Ford Motor Co.*, 386 Mass. 95, 97-98 (1982); *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 353 (1983).

not hold the baffle with sufficient firmness; in his view, the baffle should have been held to the deck by spot welds. The opposing expert defended the design and objected to using welds chiefly on the ground that a user would not be able to replace the baffle in case it was bent out of shape. Whatever might be said about the design, the particular mower in suit here could be found defective in that its baffle was insecure when the machine was purchased by the plaintiff.[6] It is a different question whether the defect, inhering in the design or in the particular machine, was "unreasonably dangerous"[7] — created a serious risk of personal injury to an operator. An insecure baffle was not in itself a serious threat to personal safety; note that the deck served as protection from the blade, with the baffle inside the deck. We can say that where an insecure baffle in that condition led to a malfunction in the process of mowing, an operator might wish to look at the underside of the mower. But any danger so arising would be highly contingent. Imprinted on the machine itself were clear warnings against approaching the vicinity of the blade.[8] Understanding about the risk involved is universal or nearly so at least among adults. The plaintiff indeed testified that she fully apprehended the risk.[9]

Thus the proposition could be urged that the product, if defective, was not dangerously so, and that contention evidently was made upon the motions for directed verdicts through the citation of *Maldonado* v. *Thompson Nat. Press Co.*, 16

---

[6] There was no indication that the mower had been tampered with between the time of its assembly by the Wheeler company and its sale by Stop and Shop to the plaintiff.

[7] In the § 402A formulation of liability, the product must have been "in a defective condition unreasonably dangerous to the user or consumer."

[8] "Caution." "Keep hands and feet away from blade." "Stop engine when away from mower." Also a colored decal showed a finger being severed from a hand.

[9] Compare the court's remark in *Allen* v. *Chance Mfg. Co.*, 398 Mass. 32, 35-36 (1986): "[W]e reject the suggestion that a defendant can be liable for breach of warranty of merchantability if the defendant should reasonably have foreseen that the plaintiff would *unreasonably* and voluntarily use a product, knowing it to be defective and dangerous" (emphasis original).

Mass. App. Ct. 911 (1983).[10] However, whether or not through inadvertence, the point seems to have been overlooked on the motions for judgments n.o.v., where the defendants reiterated their basic earlier insistence that proximate cause had not been made out.

*Proximate cause.* If the jury found the product dangerously defective, the court told the jury, they should go on to the question whether that condition was proximately related to the injury; on both points — product condition and proximate cause — the plaintiff had the burden of proof. The court (a) gave a standard definition of proximate cause, and (b) dealt with user's reaction to known product danger as proximate cause.

(a) The plaintiff's account of how the accident occurred was quite empty, and left any responsibility of the defendants, via the baffle to the accident and injury, to mere surmise. Compare *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 31-33 (1979), with *Carey* v. *General Motors Corp.*, 377 Mass. 736, 739-743 (1979). She had no recall whether she had pressed the on-off switch, whether the engine was stopped, whether she had turned the mower on its side, whether or how she had dealt with the baffle.

There was evidence, offered by the defendants through the deposition of the physician who first attended the plaintiff, that the plaintiff told the physician in the emergency room the cause of her injuries was that "while using a lawnmower [she] stuck her hand into the outchute and got it caught in the whirling plate" (so recorded in the physician's "operative report" the following morning). The plaintiff, however, did not recall making the statement. On review of judgments n.o.v., we disregard

---

[10] *Maldonado*, although a negligence case, was cited by the defendants among their reasons for requesting directed verdicts for failure of proof of breach of warranty. The court said in that case (at 912): "In view of the warning sign on the press, the obvious peril of placing a hand into a fast-moving press, the plaintiff's admission that he was aware of that hazard, and his understanding of the steps he was to take to avert injury, we think the jury lacked any basis in the evidence from which they might reasonably infer that any additional warning by the defendant would have so further alerted the plaintiff as to avoid the accident."

the physician's testimony, since the jury may have done so. Thus, like the plaintiff, we experience a "blank." Then it was suggested that what the plaintiff said she did on the four occasions, she should be assumed to have done on the fifth. This leads nowhere because, on the last occasion as distinguished from the others, she was struck by a moving blade (the injuries must have been so inflicted), and the plaintiff left that fact without explanation.[11] We conclude that proximate cause in the customary or usual sense was not shown between the product defect and the injury.

(b) As noted, the judge in his instructions pursued a further line. It corresponded (although not exactly) to the formulation in *Allen* v. *Chase Mfg. Co.*, 398 Mass. 32, 34 (1986), restating *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355-357 & n.12 (1983); see also Restatement (Second) of Torts § 402A comment n (1965). The court said in *Allen* (at 34), that a user was barred from recovery when "(1) he violated a duty to act reasonably with respect to a product he knew to be defective and dangerous and (2) that conduct was a cause of the injury."[12]

The judge's charge did not deal in so many words with the burden of proof on this particular matter, but we take the charge, reproduced in pertinent part in the margin,[13] as placing

---

[11] The plaintiff's expert stated that the product defect was the cause of the injuries, but we take the statement to have been made pro forma; moreover the witness was going on the impossible assumption that the machine was at rest when the injuries were received.

[12] The *Correia* case said (at 356), "[T]he user's negligence does not prevent recovery except when he unreasonably uses a product that he knows to be defective and dangerous. In such circumstances, the user's conduct alone is the proximate cause of his injuries, as a matter of law, and recovery is appropriately denied."

Besides restating *Correia*, the *Allen* opinion clarified the position of so-called "misuse" in warranty cases, as well as the distinction between unreasonable conduct in the face of known danger and conventional assumption of risk.

[13] "[T]he plaintiff has the burden of proving that there was a breach of the implied warranty of merchantability and of proving that her injuries were proximately related to that breach. The defendant has no burden of proof in this case. That is, the defendant need not disprove anything. The

the burden on the plaintiff to show that she acted reasonably in her response to the known danger. This was mistaken, according to the *Allen* case (at 34), decided more than a year later, but no objection was taken to the charge, and it constituted the law of the case.

The plaintiff herein did not begin to show that she acted reasonably. Indeed, although not necessary to decision, we suggest that once a possible failure in the switching apparatus is discounted, as we indicated above it should be, the record demonstrates with high probability that the plaintiff acted unreasonably in confronting a moving blade; so judgments against her were in order even if the defendants bore the burden on the particular point. See *Johnston* v. *Senecal*, 329 Mass. 556, 557 (1952); *Gaynor* v. *Laverdure*, 362 Mass. 828, 840-841 (1973).[14]

At all events, whether under point (a) or (b), the judgments under review, as well as the order denying a new trial, should be affirmed.

*So ordered.*

---

plaintiff has the burden of proving those two factors . . ." "[T]he only duty imposed upon the user, upon the plaintiff, in a warranty action is to act reasonably with respect to a product which she knows to be defective and dangerous. . . . If you find that the plaintiff used the lawnmower unreasonably and further that she knew that the product was defective and dangerous and you also find that such conduct was the proximate cause of the injuries, and that the defendants' conduct, either of them, was not a proximate cause of her injuries, then the plaintiff is not entitled to recover under her claim for breach of warranty."

[14] We perceive no basis for allowing a new trial if, as we hold, there was a proper basis for allowing judgments n.o.v.