Gail F. LUBANSKI, etc., et al.,
Plaintiffs, Appellants,

v.

COLECO INDUSTRIES, INC.,
Defendant, Appellee.

No. 90–1703.

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 1991.

Decided April 3, 1991.

Janis M. Berry, with whom Marc J. Bloostein and Ropes & Gray, Boston, Mass., were on brief, for plaintiffs, appellants.

Paul R. Keane, with whom Douglas A. Robertson and Martin, Magnuson, McCarthy & Kenney, Boston, Mass., were on brief, for defendant, appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

TORRUELLA, Circuit Judge.

This appeal arises out of a products liability action[1] instituted against Coleco Industries by Gail F. Lubanski as administratrix for the estate of her son James S. ("Jimmy") Lubanski[2] alleging breach of warranty[3] in the design, manufacture and sale of a child's three-wheeled riding apparatus marketed under the trade name

---

1. Jurisdiction was based on diversity of citizenship.

2. Gail F. Lubanski also sued in her individual capacity as well as in the capacity of executrix for the estate of Stanley Lubanski, Jr., and as parent and next friend for her daughter Kristen Lubanski. We shall refer herein to Gail Lubanski as the plaintiff, in the singular, encompassing by that reference all of her capacities.

3. Negligence was also charged in the complaint, but that count was withdrawn prior to trial.

"Power Cycle."[4] Plaintiff's complaint alleged that the Power Cycle was defective and unreasonably dangerous as a result of the low profile of its design, the noise it made while in motion, the lack of a braking mechanism, and Coleco's inadequate warnings regarding improper use of the product. The district court rendered a directed verdict for Coleco on the braking mechanism issue and the issue of noise, and the jury returned a verdict in favor of Coleco on the remaining issues. We are in agreement with the district court's resolution of this case.

### FACTS

At approximately 5:00 p.m. on the afternoon of September 22, 1985, Jimmy Lubanski was riding a Coleco Power Cycle in front of his house on Cunningham Street in Wilmington, Massachusetts, when he was struck and killed by a 1974 Ford Grand Torino Elite driven by James Litwinsky. Although two neighbors were talking in a nearby driveway, there were no eyewitnesses to the actual collision. Litwinsky maintained that he never saw Jimmy and that he only became aware of Jimmy's presence when he heard a thud upon impact. Police believed these statements, and no criminal charges were filed against Litwinsky.

The accident was investigated by the Wilmington Police Department and the Massachusetts State Police. State Trooper Steven Benanti testified at trial that based upon his observations of the physical evidence, impact occurred at a point on Cunningham Street immediately adjacent to a sand-covered portion of the roadway. In addition, he determined that Jimmy's Power Cycle was hit on its left side by the right front bumper of Litwinsky's car. Trooper Benanti calculated the speed of the automobile to have been between 23 and 25 miles per hour, well within the 30 m.p.h. speed limit for Cunningham Street. He further stated that he believed there was no way to determine how fast Jimmy might have been pedalling the Power Cycle; however,

he did offer a conclusion as to the general direction in which the Power Cycle was moving just prior to impact. It was Trooper Benanti's opinion that the Power Cycle had been moving down the slope of the driveway leading from Jimmy's house.

Plaintiff's accident reconstructionist, Dr. David Pesuit, provided additional testimony on the issue of movement and direction. In Dr. Pesuit's opinion, Jimmy had been executing a U-turn at the end of the driveway when he was struck and killed.

Plaintiff's principal contentions at trial were (1) that the low profile of the Power Cycle made it unsuitable for outdoor use without a flag, or pennant, to enhance its visibility and (2) that the noisemaker attached to the front wheel of the Power Cycle made operation of the toy unsafe as it masked the sound of oncoming motor vehicles.

In response to plaintiff's first contention, Coleco offered the testimony of accident reconstructionist Jeffrey L. West. West concluded that, despite police findings to the contrary, given conditions as they existed on September 22, Jimmy's Power Cycle should have been clearly visible to an operator of a motor vehicle such as Litwinsky's. He further contended that had Litwinsky seen the child, enough time would have existed thereafter for an attentive operator to avoid collision. Plaintiff's second contention was resolved by directed verdict.

On appeal, plaintiff challenges the district court's exclusion of several pieces of evidence, specifically State Trooper Benanti's written report, certain expert testimony by Dr. Pesuit, and plaintiff's rebuttal evidence. In addition, plaintiff challenges the admissibility of Coleco's photographic enlargements. Plaintiff also alleges that a directed verdict with regard to the issue of noise was improper. We consider each of plaintiff's assertions in turn.

### STATE TROOPER'S REPORT

■ Plaintiff's witness State Trooper Benanti was not identified as an expert prior

---

**4.** The particular Power Cycle involved in this case was the "E.T." model; however, Power

Cycles are more commonly known as "big wheels" or "hot wheels."

to trial. The district court therefore ruled that Benanti would not be allowed to give expert, as opposed to lay, testimony. In lieu of prohibited opinion testimony, plaintiff sought to admit into evidence Trooper Benanti's written accident report, specifically that portion of the report containing Benanti's conclusions. The district court refused to grant admission. Plaintiff maintains that the report should have been admitted under Federal Rule of Evidence 803(8)(C) as a report of a public office or agency setting forth "factual findings resulting from an investigation made pursuant to authority granted by law" and that it was improperly excluded because Coleco failed to show that the report was untrustworthy.[5] Coleco, on the other hand, contends that Benanti's report was not only excludable under Rule 803(8)(C) for lack of trustworthiness—hearsay of a biased witness (Litwinsky)—but was also excludable under Federal Rule of Evidence 403 because it was confusing, misleading and cumulative. The record, however, discloses that the district court made neither of these findings. The district judge's ruling clearly indicates that her decision rested solely upon a determination that admissibility of the report went beyond the purview of Rule 803(8)(C).

We recognize that district courts have broad discretion regarding the admissibility of evidence and should only be reversed upon a showing of abuse of discretion. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir.1987). Keeping in mind the rigors of this standard, we nevertheless resolve that the district court's reasoning constituted error.

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), settled a long-standing conflict among the circuits regarding the admissibility, under Federal Rule of Evidence 803(8)(C), of accident reports containing investigators' conclusions and opinions.[6] The Court held that "statements in the form of opinions or conclusions are not by that fact excluded from the scope of Federal Rule of Evidence 803(8)(C)." *Id.* at 175, 109 S.Ct. at 453. The test for admissibility is two-fold: "As long as the conclusion is [1] based on a factual investigation and [2] satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Id.* at 170, 109 S.Ct. at 450. Other rules, such as Rule 403, provide additional evidentiary safeguards against irrelevant or prejudicial information. *Id.* at 168, 109 S.Ct. at 449.

In *Puerto Rico Ports Authority v. M/V Manhattan Prince*, 897 F.2d 1 (1st Cir. 1990), this court indicated its willingness to interpret *Rainey* broadly. *Id.* at 8 (refusing to find inadmissible under *Rainey* conclusory statements attributing a nautical accident to the use of improper speed by the pilot, the failure of the master to take command and control, and the action of the tug in dropping its lines). A broad interpretation appears to be the prevailing opinion among the other circuits as well. *See Farmers & Merchants Nat'l Bank v. Bryan*, 902 F.2d 1520, 1523–24 (10th Cir. 1990); *United States v. Romo*, 914 F.2d 889, 896 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991); *Glados, Inc. v. Reliance Ins. Co.*, 888 F.2d 1309, 1312 (11th Cir.1987), *cert. denied*, —— U.S. ——, 110 S.Ct. 3273, 111 L.Ed.2d 783 (1990).

■ Based upon this inquiry, we conclude that Trooper Benanti's report was at least deserving of an initial presumption of

---

**5.** Rule 803(8)(C) allows the admission of such evidence "unless the sources of information or other circumstances indicate lack of trustworthiness."

**6.** The Eleventh and Fifth Circuits were proponents of the "narrow view" which interpreted the language of Rule 803(8)(C) very strictly to allow into evidence facts only. *See Smith v. Ithaca Corp.*, 612 F.2d 215, 221–23 (5th Cir.1980) (relied upon by the Eleventh Circuit in *Rainey*), *abrogated by*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), *on remand*, 868 F.2d 1531 (5th Cir.1989), *overruling recognized*, 734 F.Supp. 722 (E.D.La.1990). Most of the remaining circuits that addressed the issue adopted a broader interpretation encompassing opinions and conclusions. *See, e.g., Baker v. Elcona Homes Corp.*, 588 F.2d 551, 557–58 (6th Cir. 1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979); *Rainey*, 488 U.S. at 162 n. 7, 109 S.Ct. at 446 n. 7.

admissibility. The majority of his report documented factual findings surrounding his investigation of the accident scene, while his opinion comprised only one short paragraph of a three page report. Moreover, the conclusory statements, "James Litwinsky ... did not observe [Jimmy] prior to the collision. [Jimmy], on his big wheels [came] down the driveway ... out into the road where contact was made," are of the nature contemplated by the Court in *Rainey. Rainey*, 488 U.S. at 158, 109 S.Ct. at 444 (the disputed statement read: "The most probable cause of the accident was the pilots [sic] failure to maintain proper interval"). Thus it was error for the district court to exclude the report pro forma, *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir.1990) (once a report is "shown to be governed by Rule 803(8)(C) ... the essential inquiry becomes whether the report is trustworthy"); however, this does not necessarily mean that the district court erred in excluding the report. If there is another ground upon which to exclude the evidence, we need not reverse, even if the trial court did not cite the proper justification. *See, e.g., United States v. Nivica*, 887 F.2d 1110, 1127 (1st Cir.1989) ("If the trier incorrectly admits evidence under a hearsay exception, we will not reverse so long as the material was properly admissible for the same purpose under a different rule of evidence."). In the instant case, it seems that exclusion may have been appropriate either because the report was untrustworthy or because the report was confusing, misleading or cumulative within the purview of Federal Rule of Evidence 403. We need not, however, resolve that issue because we reach the same result whether the report was properly or improperly excluded. If the report was excludable on either ground set forth above, there would be no occasion to reverse. And if the report was admissible, as plaintiff maintains, any error in excluding it was rendered harmless by oral testimony.

In determining whether error is harmless, "[o]ur inquiry is whether [exclusion] of the evidence affected plaintiff[']s substantial rights." *Vincent v. Louis Marx & Co., Inc.*, 874 F.2d 36, 41 (1st Cir.1989); *see*

*also* 28 U.S.C. § 2111; Fed.R.Evid. 103(a). The central question is whether this court "can say 'with fair assurance ... that the judgment was not substantially swayed by the error.'" *Lataille v. Ponte*, 754 F.2d 33, 37 (1st Cir.1985) (quoting *United States v. Pisari*, 636 F.2d 855, 859 (1st Cir.1981) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946))). The centrality of the evidence sought to be admitted and the prejudicial effect of its exclusion are two important factors to consider, *id.;* however, the "determination must be made in the context of the case as gleaned from the record as a whole." *Vincent*, 874 F.2d at 41 (quoting *De Vasto v. Faherty*, 658 F.2d 859, 863 (1st Cir.1981)).

Trooper Benanti's report touched both the issue of visibility and the issue of noise, clearly central to plaintiff's case, but upon review of the record we do not see that plaintiff suffered any prejudice as a result of its exclusion. During oral examination, Trooper Benanti testified to substantially the same information contained in his written report, including his conclusory statements. When asked "[What] was the general direction of the path of travel of the Power Cycle," Benanti responded "Down the driveway." In addition, Benanti referred to Litwinsky's statement that he (Litwinsky) looked through his rear view mirror after impact and only then, when he observed the boy, did he stop his vehicle. Although not phrased in precisely the same language as the written report, this statement clearly apprised the jury that Litwinsky claimed not to have seen the boy before impact. The fact that the evidence was presented in testimonial rather than written form cannot be said to have prejudiced plaintiff's case. Provided "all the facts upon which the investigator's conclusion[s] [were] based were brought out in his testimony, the mere fact that he did not say directly" what was contained in his written report does "not substantially detract from his testimony" and therefore does not rise to the level of harmful error. *Glados*, 888 F.2d at 1313.

## DR. PESUIT'S TESTIMONY

▮ Pre-trial, plaintiff anticipated calling Dr. Pesuit as an expert on the issue of noise. Dr. Pesuit was listed on plaintiff's pre-trial witness list and remained on that list during the first two days of trial. On the third day of trial, in an effort to consolidate the case and conserve judicial time, plaintiff decided not to call him. At that time plaintiff intended to rely solely on the testimony of a second expert witness, Paul Pritzker. Plaintiff, however, felt that Pritzker's testimony was incomplete and therefore sought to reinstate Dr. Pesuit as a witness. The district court reluctantly allowed Dr. Pesuit to testify, but limited his testimony to the manner in which the accident occurred, including the direction and location from which the Power Cycle was coming and how the Power Cycle was hit. Plaintiff maintains that the court incorrectly excluded an acoustical analysis chart prepared by the witness. Upon review of the record, we find that was not the case.

During Pritzger's testimony, on the fourth day of trial, plaintiff asked the court to reinstate Dr. Pesuit as a witness. At that time plaintiff indicated that Dr. Pesuit would be relying upon an acoustical chart. When Coleco objected, plaintiff's counsel clearly stated: "I won't use the chart, your Honor." Record at 4–8. No later attempt was made to introduce the acoustical chart when Dr. Pesuit was called to the stand. Thus the decision to exclude the evidence was clearly that of plaintiff, not the court. We therefore find no reason to discuss the issue further.

## REBUTTAL EVIDENCE

▮ At the close of Coleco's defense, plaintiff sought to introduce two pieces of rebuttal evidence: (1) measurements to prove that two neighbors who were talking in a driveway on Cunningham Street at the time of the accident, and who claimed not to have heard Jimmy's Power Cycle just prior to impact, were standing too far from the Lubanski driveway to have heard any noise made by the Power Cycle, and (2) a video tape depicting an automobile driver's line of vision while motoring along Cunningham Street. The district court refused to allow the evidence. Plaintiff claims that this constituted error because the purpose of the evidence was to counter the testimony of Coleco's expert witness, Jeffrey L. West. We disagree.

"Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in [the] opponent's case in chief." *Morgan v. Commercial Union Assurance Cos.,* 606 F.2d 554, 555 (5th Cir.1979) (emphasis omitted). "The determination of what constitutes proper rebuttal evidence [lies] within the sound discretion of the [district court]." *Hickok v. G.D. Searle & Co.,* 496 F.2d 444, 447 (10th Cir.1974).

Turning to the case at hand, both pieces of rebuttal evidence were available to plaintiff during her case in chief. Moreover, the testimony she sought to rebut was not unexpected. In light of these circumstances, we hold that the district court acted well within its discretion by refusing to allow the evidence. *See generally Rodriguez v. Olin Corp.,* 780 F.2d 491, 494–96 (5th Cir.1986).

## PHOTOGRAPHIC ENLARGEMENTS

▮ Coleco's accident reconstructionist, Jeffrey L. West, submitted into evidence a series of photographic enlargements portraying a staged version of the accident scene on Cunningham Street. Plaintiff was aware that Coleco intended to use the photographs in their original size; however, production of the enlargements was unexpected. Plaintiff objected vehemently to the admissibility of the enlargements, claiming that they depicted a distorted view and thus were grossly prejudicial. The district court allowed the enlargements over plaintiff's objection. Plaintiff now asserts that the district court committed error. We do not agree.

Again we note that determinations regarding the admissibility of evidence lie within the sound discretion of the district court. *Conway,* 825 F.2d at 597. That discretion extends to the admissibility of

48

photographs. *Dabney v. Montgomery Ward & Co., Inc.*, 761 F.2d 494, 500 (8th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). A staged photograph is admissible if the court makes a preliminary determination that the photograph depicts a correct likeness of the scene it purports to represent. *Georgia S. & Fla. Ry. Co. v. Perry*, 326 F.2d 921, 924 (5th Cir.1964). Once the court has so determined, differences between the actual scene and the photograph go to the weight of the evidence rather than its admissibility. *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1199 (4th Cir.1982).

In this case, plaintiff was aware before trial that Coleco intended to use photographs. Plaintiff, however, did not object to those photographs in their original five-inch by seven-inch form. The district court was aware of plaintiff's earlier failure to object when making its preliminary determination with respect to the admissibility of enlargements. We find that fact alone persuasive in concluding that no error occurred below.

■ Moreover, we recognize that West was thoroughly cross-examined regarding any discrepancies between the actual scene and his staged version. Thus even if we were to find that error was committed below, such error was rendered harmless because plaintiff suffered no prejudice. *See Lataille*, 754 F.2d at 37.

### DIRECTED VERDICT

In reviewing a district court's grant of directed verdict, this court "examine[s] the evidence and [all] inferences reasonably extractable therefrom in the light most hospitable to the nonmovant." *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1088 (1st Cir.1989). We do so without considering the credibility of the witnesses, resolving conflicts in testimony, or evaluating the weight of the evidence. "To affirm withdrawal of [a] claim from the jury, we must find," viewed from this perspective, "that ... the evidence ... permit[s] thoughtful

factfinders to reach but one reasoned conclusion." *Id.*

■ In a products liability case subject to Massachusetts law,[7] the burden rests with the plaintiff to prove, by a preponderance of the evidence, that the injury resulted from the defendant's negligence or breach of warranty. *Hayes v. Ariens Co.*, 391 Mass. 407, 462 N.E.2d 273, 278 (1984). The order of proof is as follows: The plaintiff must initially prove that the product is both defective and unreasonably dangerous. The plaintiff then bears the burden of establishing that the existence of said defect was the proximate cause of the injury. *Barry v. Stop & Shop. Cos.*, 24 Mass. App.Ct. 224, 507 N.E.2d 1062, 1063–64, *rev. denied*, 400 Mass. 1103, 511 N.E.2d 620 (1987).

■ Plaintiff in this case maintains that sufficient evidence was presented in order to forestall a directed verdict. Plaintiff first refers to noise testing performed by expert safety engineer Paul Pritzker, demonstrating that a moving Coleco Power Cycle is louder than a moving automobile, as support for the proposition that a reasonable jury could have found that the noise made by Jimmy's Power Cycle constituted an unreasonably dangerous defect. Plaintiff then points to testimony establishing that Jimmy's Power Cycle was in motion, together with the fact that the Power Cycle's noisemaker was intact, as evidence from which a reasonable jury could have concluded that Jimmy's Power Cycle was making excessive noise at the time of the accident. From these two conclusions, plaintiff maintains that a reasonable jury could easily have reached the ultimate conclusion that the noise of the Power Cycle prevented Jimmy from hearing Litwinsky's oncoming motor vehicle and consequently prevented Jimmy from avoiding the fateful accident. Plaintiff's proof, however, fails in several respects.

Based upon the evidence presented at trial, we accept the fact that Jimmy's Power Cycle was probably in motion just prior to the collision. We further acknowledge

7. The parties agree, and we do not dispute, that Massachusetts law applies.

that the noisemaker was in place at the time of trial. Since Coleco made no allegations of tampering, we are willing to accept that the noisemaker was also in place on the date of collision. Movement and the presence of a noisemaker, however, do not prove, even by a preponderance of the evidence standard, that the Coleco Power Cycle, when ridden by a small child under the conditions presented herein, creates excessive noise amounting to an unreasonably dangerous defect or that the noise created was responsible for Jimmy's accident.

First, plaintiff's evidence failed to demonstrate the speed at which the Power Cycle was travelling. Since the Power Cycle's noisemaker is activated by the rotation of its large front wheel, evidence of speed was crucial in order to determine the noise generated at the time of the accident. Second, plaintiff's noise expert calculated the decibel level generated by a power cycle when operated along a sidewalk. The area of roadway adjacent to the point of impact, however, was covered with sand. Plaintiff's expert evidence failed to demonstrate the decibel level of a Power Cycle when driven through sand.[8] Also, there was evidence that the Power Cycle was executing a U-turn at the time of collision. Plaintiff's expert evidence similarly failed to demonstrate the decibel level of a Power Cycle while being turned.

As our discussion indicates, plaintiff in this case did not lay a sufficient foundation for the conclusions she wished the jury to reach. In reviewing the appropriateness of directed verdicts, this court has held that the objecting party's evidence "must comprise more than fragmentary tendrils: a mere scintilla of evidence is not enough to forestall a directed verdict, especially on a claim or issue as to which the burden of proof belongs to [that] party." *Fashion House*, 892 F.2d at 1088. Similarly, Massachusetts courts have held that speculation and conjecture are insufficient to meet the plaintiff's burden of proof on a products liability claim. *Goffredo v. Mercedes–Benz*

*Truck Co.*, 402 Mass. 97, 520 N.E.2d 1315, 1318 (1988); *Swartz v. General Motors Corp.*, 375 Mass. 628, 378 N.E.2d 61, 65 (1978). The district court therefore did not err in granting a directed verdict on the issue of noise defect.

## CONCLUSION

For the preceding reasons, we *affirm*.

... and there's no evidence ... how much noise the [tricycle] would make if it were traveling in sand."

---

8. We note that the district court expressly recognized both of these deficiencies when ruling on the issue of directed verdict. We quote: "we do not know how fast the ... tricycle was moving